```
                 UNITED STATES DISTRICT COURT
                   DISTRICT OF CONNECTICUT

-------------------------------- x
THERESA BOWLING, M.D.,           :
                                 :
          Plaintiff,             :
                                 :
     v.                          :  Civil No. 3:17-cv-642(AWT)
                                 :
STAMFORD ANESTHESIOLOGY          :
SERVICES, P.C.,                  :
                                 :
          Defendant.             :
-------------------------------- x
```

### ORDER RE MOTION FOR SUMMARY JUDGMENT

The Defendant's Motion for Summary Judgment (ECF No. 207) is hereby DENIED.

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In ruling on a summary judgment motion, the district court must "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment" and determine whether there is a genuine dispute as to a material fact, raising an issue for trial. Kessler v. Westchester Cty. Dep't of Soc. Servs., 461 F.3d 199, 206 (2d Cir. 2006) (quoting Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001)). A fact is "material" when it "might affect the outcome of the suit under governing law." Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d

Cir. 2005) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

Theresa Bowling, M.D., brings claims against Stamford Anesthesiology Services, P.C. ("SAS"), for disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a), and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60. She also brings claims for retaliatory discharge in violation of the ADA, 42 U.S.C. § 12203, and the CFEPA, Conn. Gen. Stat. § 46a-60(b)(4).  The analysis with respect to the ADA claims and the CFEPA claims is the same.  See Curry v. Allan S. Goodman, Inc., 286 Conn. 390, 407 (2008) ("Connecticut antidiscrimination statutes should be interpreted in accordance with federal antidiscrimination laws.").

To establish a prima facie case for the disability discrimination claims, Bowling is required to show: "(1) [her] employer is subject to the ADA; (2) [she] was disabled within the meaning of the ADA; (3) [she] was otherwise qualified to perform the essential functions of [her] job, with or without reasonable accommodation; and (4) [she] suffered adverse employment action because of [her] disability." Fox v. Costco Wholesale Corp., 918 F.3d 65, 71 (2d Cir. 2019) (quoting McMillan v. City of N.Y., 711 F.3d 120, 125 (2d Cir. 2013)).  To establish a prima facie case for the retaliatory discharge

claims, Bowling must show: "(1) [she] was engaged in an activity protected by the ADA, (2) [SAS] was aware of that activity, (3) an employment action adverse to [her] occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." Weissman v. Dawn Joy Fashions, Inc., 214 F.3d 224, 234 (2d Cir. 2000) (quoting Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999)). With respect to all claims, Bowling must also show that she was an "employee" of SAS within the meaning of the ADA. See 42 U.S.C. §§ 12111(8), 12112(a).

    **A.   Whether Bowling was an employee**

SAS argues that Bowling was not an employee of SAS for purposes of the ADA because she was a shareholder of the professional corporation. Determining whether an individual is an employee under the ADA requires the application of the fact-intensive test set out in Clackamas Gastroenterology Associates v. Wells, 538 U.S. 440 (2003). Before stating its conclusion that "the common-law element of control is the principal guidepost that should be followed," id. at 448, the Court cautioned that "[t]he question whether a shareholder-director is an employee, however, cannot be answered by asking whether the shareholder-director appears to be the functional equivalent of a partner," id. at 446. The Court held that the following six

factors are relevant to determine whether a shareholder-director is an employee:

> Whether the organization can hire or fire the individual or set the rules and regulations of the individual's work;
>
> Whether and, if so, to what extent the organization supervises the individual's work;
>
> Whether the individual reports to someone higher in the organization;
>
> Whether and, if so, to what extent the individual is able to influence the organization;
>
> Whether the parties intended that the individual be an employee, as expressed in written agreements or contracts;
>
> Whether the individual shares in the profits, losses, and liabilities of the organization.

Id. at 449-50 (quoting 2 Equal Emp. Opportunity Comm'n, Compliance Manual § 605.0009).

"[A]n employer is the person, or group of persons, who owns and manages the enterprise." Id. at 450.

> The employer can hire and fire employees, can assign tasks to employees and supervise their performance, and can decide how the profits and losses of the business are to be distributed.  The mere fact that a person has a particular title--such as partner, director, or vice president--should not necessarily be used to determine whether he or she is an employee or a proprietor. . . .  Nor should the mere existence of a document styled "employment agreement" lead inexorably to the conclusion that either party is an employee. . . .  Rather, as was true in applying common-law rules to the independent-contractor-versus-employee issue confronted in Darden, the answer to whether a shareholder-director is an employee depends on "all of the incidents of the relationship . . . with no one factor being decisive."

Id. at 450-51 (citations omitted) (quoting Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 324 (1992)).  Also, it should be kept in mind that a person can be an employee for purposes of one statute but not for purposes of another.  See id. at 453 (Ginsburg, J., dissenting).

    Although it is true, as SAS argues, that the question of whether Bowling was an employee under the ADA is one of law and not fact, the question must be decided at summary judgment based on only undisputed facts.  See Bluestein v. Cent. Wis. Anesthesiology, S.C., 769 F.3d 944, 953 (7th Cir. 2014) ("the question for [the plaintiff] is whether she raised a genuine issue of material fact on the issue of her status as an employee"); Mann v. Est. of Meyers, 61 F. Supp. 3d 508, 531 (D.N.J. 2014) (applying the Clackamas test and concluding that the court "cannot find, on summary judgment, that [the plaintiff] is not an employee" because of "issues of fact . . . [that] remain highly relevant").

    Here, Bowling has created genuine issues of material fact with respect to whether she was an employee for purposes of the ADA.  First, Bowling has created a genuine issue of fact as to whether she was able to influence the organization.  For example, there are issues as to whether Bowling was provided with notice of all shareholder meetings while she was on medical leave, (see Theresa Bowling, M.D.'s, Local Rule 56(a)(2)

Statement of Facts ("Bowling 56(a)(2) Statement"), ECF No. 238, Ex. 13, at 40:9-41:16) (Dr. Robustelli testifying that she organized a meeting with all Class A shareholders except Bowling)); as to whether Bowling was afforded any opportunity to influence or participate in the decision regarding whether she would be reimbursed for her attorneys' fees under the By-Laws, (see Aff. of Theresa Bowling M.D. Supp. Opp'n Summ. J. ¶ 27, ECF No. 51); and as to whether SAS refused to provide her with information regarding the financial status of the business or business affairs, (see id. ¶ 17; Aff. of Theresa Bowling, M.D. Supp. March 18, 2020 Opp'n Summ. J. ("2020 Bowling Aff."), ECF No. 236, Ex. I, at 1 ("she can't have our financial information which will not do her any good")).

Second, Bowling has created a genuine issue as to whether she shared in SAS's profits in 2016 because Dr. Finkel testified that although Form K-1 profit distributions were not paid to any shareholders in 2016, the Form W-2 income of the partners working during 2016 was correspondingly higher due to the lack of profit distributions. (Pl.'s Local Rule 56(a)(2) Statement of Facts, ECF No. 50, Ex. 1, at 179:17-42.)

Moreover, SAS's shareholders recognized the distinction between Bowling's status as a shareholder and her status as an employee. (See 2020 Bowling Aff. Ex. H, at 1 ("Her status as a

shareholder should not be protected by Haven only her employment.").)

### B. Whether Bowling was qualified to perform the essential functions with or without reasonable accommodation

SAS argues that Bowling was not qualified to perform the essential functions of the position with or without reasonable accommodation.  Determination of whether a job function is essential requires "a fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice."  McMillan, 711 F.3d at 126.  Considerations include "the employer's judgment, written job descriptions, the amount of time spent on the job performing the function, the mention of the function in a collective bargaining agreement, the work experience of past employees in the position, and the work experience of current employees in similar positions."  Stevens v. Rite Aid Corp., 851 F.3d 224, 229 (2d Cir. 2017) (quoting McMillan, 711 F.3d at 126).

A "reasonable accommodation" may include, inter alia, "[j]ob restructuring[,] part-time or modified work schedules[, and] reassignment to a vacant position."  29 C.F.R. § 1630.2(o)(2)(ii).  "To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation" to "identify the

-7-

precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." Id. § 1630.2(o)(3). "[T]he question of whether a proposed accommodation is reasonable is 'fact-specific' and must be evaluated on 'a case-by-case basis.'" Kennedy v. Dresser Rand Co., 193 F.3d 120, 122 (2d Cir. 1999) (quoting Wernick v. Fed. Reserve Bank, 91 F.3d 279, 385 (2d Cir. 1996)).

Genuine issues of material fact also exist with respect to this element. For example, there is evidence that SAS made accommodations for other physician-shareholders who similarly could not take call or practice at TSH or Tully, such as Dr. Jankelovits, who could do neither during a two-week suspension. (Bowling 56(a)(2) Statement Ex. 10, at 79:24.) But Jankelovits's employment was not terminated, and to his memory, no one at SAS suggested that it should have been terminated. (Id. Ex. 10, at 93:6-17.) Also, Dr. Crane, a Class B shareholder, was permitted to go on medical leave, during which she neither practiced medicine nor took call. But upon return from her leave, she was allowed to relinquish her status as shareholder, became a part-time employee, and now does not take call. (Consol. Rule 56(a) Statement, ECF No. 247, Ex. 61, at 121:16-20.)

With respect to Bowling's privileges to practice at TSH and Tully, there is a genuine issue as to whether Bowling could have

regained those privileges on a temporary basis in an expedited manner. (See 2020 Bowling Aff. ¶¶ 46-48.) With respect to taking call, Bowling avers that when she was actively practicing as a Class A shareholder at SAS, she sold most of her call responsibilities to other shareholders, and that this was a common and accepted practice at SAS.

### C. Whether Bowling had a good-faith belief in the basis of her CHRO complaint

SAS argues that Bowling was not engaged in protected activity because she did not have a good-faith basis to believe the veracity of her CHRO complaint. Complaints that an employer violated the ADA are protected by the ADA as long as the plaintiff can establish that she "possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated that law." Weissman, 214 F.3d at 234 (quoting Sarno, 183 F.3d at 159).

SAS contends that Bowling's April 2016 CHRO Complaint was "objectively false" because Bowling stated "that she could perform her job and that SAS forced her to take an indefinite leave." (Mem. Supp. Def.'s Mot. Summ. J. at 30, ECF No. 209.) SAS states that it is undisputed that Bowling requested the medical leave and that HAVEN restricted her ability to practice anesthesiology. SAS points out that when HAVEN learned of Bowling's CHRO Complaint, it referred Bowling to the Department

-9-

of Public Health to determine if the CHRO Complaint warranted Bowling's dismissal from HAVEN.

However, Bowling has created a genuine issue of fact as to whether she had a good-faith belief that actions by SAS as described in the CHRO Complaint (i.e., that SAS required her to take an indefinite medical leave, ignored her requests for financial information, and breached her employment agreement by paying her $10,000 per month instead of $50,000 per month) violated the ADA.  Although there may be certain inaccuracies in the factual background alleged in the CHRO Complaint, the court cannot conclude on this record that, as a matter of law, Bowling lacked a good faith, reasonable belief that SAS's actions which formed the basis of the CHRO Complaint violated the ADA. Bowling has argued in this litigation that she was qualified to perform the essential functions of her job with reasonable accommodation because she could have performed certain non-clinical functions.  Bowling drafted the CHRO Complaint without the assistance of counsel and with the assistance of a CHRO representative.  HAVEN ultimately did not take any action against Bowling as a result of her CHRO Complaint.

> D. **Whether SAS terminated Bowling's employment because of her disability**

SAS argues that there is no genuine issue of material fact as to whether Bowling's disability was the but-for cause of the

termination of her employment.  However, there is ample evidence that could support a conclusion that SAS's proffered reasons for terminating Bowling's employment were pretextual.  (See, e.g., Bowling 56(a)(2) Statement Ex. 7, at 88:6-23 (Dr. Finkel testifying that the shareholders discussed Bowling's psychiatric health with respect to her returning to SAS); id. Ex. 8, at 113:12-21 (Dr. Morgoulis testifying that Bowling's employment was terminated due to "ill will" generated by her complaints of discrimination); id. Ex. 9, at 78:1-19 (Dr. D'Agosto testifying that Bowling's employment was terminated because she "attacked the group" and "didn't think there was any fault from her side").)

    It is so ordered.

    Dated this 24th day of August 2020, at Hartford, Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge
